## WILLIAM WOOLSTON v. WILLIAM SMEAD.

*Replevin—Showing of interest—Practice.*

Testimony in a replevin suit that plaintiff's son had offered to sell the property would not tend to show the son's actual ownership, but would tend to show his assertion of ownership, which would be some evidence that he did not recognize his father's title, and might bear upon the father's acquiescence; it would be of the same quality as testimony of the father's conduct showing the nature of his possession.

Where a fact has been shown without objection, *it seems* that farther testimony on the same point will not damnify the party against whom it is given.

One who has a present right of possession may maintain replevin, and possession is *prima facie* lawful.

A plaintiff in replevin in opening his case should set forth any special or proprietary interest on which he relies, and not rest it on a mere presumption of possession; he should not reserve evidence of his special interest to make out a new case, if necessary, by way of rebutting evidence that the real right of possession was in another.

Error to Clinton. Submitted October 21 and 22. Decided October 28.

REPLEVIN. Plaintiff brings error.

*H. & H. E. Walbridge* for plaintiff in error. The plaintiff in replevin need not be the owner, *Lansing v. Sherman,* 30 Mich., 49; as against a stranger bare possession will support the action, and defendant cannot, in defense, show title in a third party with whom he is not in privity, *Van Baalen v. Dean,* 27 Mich., 104; *Johnson v. Carnley,* 10 N. Y., 570.

*Randolph Strickland* for defendant in error. A plaintiff in replevin cannot recover without showing that he has a general or special property in the thing replevied, and a right to possess it when it was taken from him, and the writ was issued, Tiff. Justices' Guide, 92-3; *Sharp v. Whittenhall,* 3 Hill, 576; *Dunham v. Wyckoff,* 3 Wend., 280; *Wheeler v. Train,* 3 Pick., 258; *Hatch v. Fowler,* 28 Mich., 205; *Bank v. Crowley,* 24 Mich., 492; the object of replevin is to recover actual possession of property wrongfully detained from the plaintiff, *McKay v. Ross,* 40 Mich., 548; *Hickey v. Hinsdale,* 12 Mich., 99; the plaintiff's rights depend on the condition of the title and the right of possession at the beginning of suit, *Crouse v. Derbyshire,* 10 Mich., 482; *Cary v. Hewitt,* 26 Mich., 228.

CAMPBELL, C. J. Plaintiff replevied a buggy from Smead, which the latter was shown to have taken, so far as the record shows, without any right from plaintiff's barn. The defense rested entirely on the question whether the buggy at the time was in possession of the plaintiff or in the possession of his son James Woolston.

Upon this fact there was evidence before the jury and the charge of the judge was as strong in favor of the right of a party in possession as against a trespasser as could very well be made. If there was no error in other respects, there was nothing to complain of.

The defense undertook to show, and the jury were

satisfied that father and son lived together, and that the buggy belonged to the son, and was actually kept by him, and not by his father, in the building from which defendant took it.

The son's title and possession were shown by the declarations and conduct of the father and by the exercise of continued acts of ownership by the son. Among other things, this testimony of the acts and declarations of both in connection with the actual use and possession of the buggy, related to injuries and repairs to the buggy upon various occasions. Evidence was received without objection that the buggy was broken at a camp-meeting in 1878, and that it was then in possession of James, who had it repaired as his own, and at that time offered to sell it as his own. After this testimony was all in, a witness named Chamberlain was asked and allowed under objection to show the offer by James to sell the buggy just after it was broken.

This testimony did not tend to show actual ownership, but it did tend to show the assertion of ownership, which was some evidence that he did not at the time act in recognition of his father's title. It was of the same quality as the testimony received of the conduct of the father showing the nature of his possession. The same testimony on the precise point had already been received from other witnesses without objection, and no ground for this objection was given. The objection was made to the question and not to the answer, and it was certainly possible for such acts to have been done so as to bear upon the acquiescence of the father. We do not see under the circumstances that the testimony may not have been received without doing any prejudice to plaintiff, and it is not made clear to us how he was damnified by its reception after allowing the same fact to be shown by testimony not objected to.

It is also assigned as error that the court refused to allow plaintiff, in rebuttal, to show that he was himself the purchaser of the property shown by the defense to

have been purchased by the son.    Upon this there is more plausibility than force in the ground stated.

There is no doubt, and it was so held below, that a person who has a present right of possession may maintain replevin without any further valuable interest; and it is also true that possession is *prima facie* lawful.  But in this as in other actions a plaintiff ought to make out in his opening the case on which he chooses to rest his rights, unless what the defendant proves is something more than a disproof of his claim thus shown.    In the present case his apparent possession was not the question in issue, but was merely introduced as evidence of his right to possession.    He did not undertake to show a purchase directly, but he did undertake substantially to show that he controlled and used it, and had done so for some years; but he also showed, on his direct examination, that his sons used it as well as himself. It seems to us that after going thus far, he was bound, if he desired to rest on any proprietary or special interest, to show what interest he claimed.

The defendant sufficiently denied and did not merely avoid his possession by matter raising a new issue.  He disproved plaintiff's possession by showing possession in James Woolston.    The attempt of plaintiff in what he called rebuttal was practically to make out a different right from that on which he rested his case in the first instance; and it necessarily would have opened the door for a new controversy, in which defendant might have met this proof by a still different showing on his own behalf.    It is undoubtedly not very easy to determine in all cases what is a new case and what is rebuttal, but we think in such an action as this, where there may be room in many instances for substantial damages for the detention or for injuries to the property, there is no injustice in requiring the plaintiff to make an honest showing of his rights.    It would, we think, be the duty of a trial court to give him the benefit of any fair doubts by allowing testimony wherever justice requires it, and

in the present case it would not have been improper. But the plaintiff in this case undertook to use some care to avoid showing more than the merest presumption, and evidently prepared in advance to get the supposed benefit of the last word by re-offering himself as a witness in rebuttal, instead of making a frank showing in the first place. He did not ask relief by way of favor, but of right, and we think he could not do this.

The judgment must be affirmed with costs.

The other Justices concurred.